MC 19 (3/13) REQUEST AND ORDER TO SEIZE PROPERTY    MCL 600.2920, MCL 600.6002, MCR 3.106

IN RE: Nancy Vander ROEST, Debtor.

Nancy Vander Roest, Plaintiff,

v.

Jerry Lee Vander Roest, Defendant.

Case No. DK 16-02246
Adversary Pro. No. 16-80311

United States Bankruptcy Court,
W.D. Michigan.

Signed June 14, 2017

John A. Potter, Twohey Maggini PLC, Grand Rapids, MI, for Plaintiff.

Jerry Lee Vander Roest, Galesburg, MI, pro se.

MEMORANDUM OF DECISION
& ORDER

PRESENT: HONORABLE SCOTT W. DALES, Chief United States Bankruptcy Judge

## I. INTRODUCTION

Nancy Vander Roest (the "Plaintiff") sued her former husband, Jerry Lee Vander Roest (the "Defendant"), to obtain an order declaring that her obligations under their prepetition divorce decree are not in the nature of support, and therefore dischargeable in her chapter 13 case. She also seeks an order awarding damages for his post-petition efforts to collect the debt, which she contends he pursued willfully and in violation of the automatic stay.

After the close of discovery, the Plaintiff filed a motion for partial summary judgment (the "Motion," ECF No. 18) on the declaratory aspects of her complaint, leaving the question of damages for another day. After two extensions, the *pro se* Defendant filed a response (the "Response," ECF No. 24). The court has reviewed the Motion and the Response, and has determined that it may resolve the Motion without additional oral arguments.

For the following reasons, the court will grant the Motion.

## II. JURISDICTION

The United States District Court for the Western District of Michigan has jurisdiction over the Plaintiff's chapter 13 bankruptcy case, and has referred the case to the United States Bankruptcy Court. *See* 28 U.S.C. §§ 1334(a) and 157(a); W.D. Mich. L. Civ. R. 83.1(a). Proceedings governing the automatic stay and the discharge of particular debts fall within the court's core jurisdiction, where the court's authority is at its height. Moreover, the parties have consented to the court's entry

of final judgment. *See* Pretrial Order dated January 25, 2017 at p. 1; *Wellness Int'l Network, Ltd. v. Sharif*, —— U.S. ——, 135 S.Ct. 1932, 1939, 191 L.Ed.2d 911 (2015).

Although the court has authority to enter final judgment, today's order, which postpones a ruling on the stay violation and damages questions, is interlocutory under the single judgment rule applicable in federal court. *See* Fed. R. Civ. P. 54(b).

### III. ANALYSIS

A court should grant a motion for summary judgment only if it is satisfied that there is no genuine factual issue warranting a trial on the merits, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056). The moving party bears the initial burden on the motion to show the absence of factual disputes and entitlement to judgment under applicable law. In reviewing a summary judgment motion, the court is mindful of where applicable law places the burden of proof. If the court is satisfied that there are no factual disputes warranting trial, the court must consider whether the moving party is entitled to relief as a matter of law.

█ In disputes involving the dischargeability of particular debts, the creditor bears the burden of bringing his claim within the exception to discharge by a preponderance of the evidence, even where, as here, the debtor filed the complaint seeking the determination. *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998). Although the decision is affected by the applicable state domestic relations laws, determining whether an obligation is in the nature of support under the Bankruptcy Code is a federal question. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983) (citations omitted)).

Here, the Plaintiff has supported the Motion by including copies of the Judgment Of Divorce dated June 17, 2013 (the "JOD," Exh. 1) and the Order re: Implementation of Judgment dated December 18, 2014 (the "Implementing Order," Exh. 2), and has made various legal arguments. Against this showing, the Defendant has submitted only his unsworn brief arguing that "Judge Bell's decision was made to ensure fairness and equal justice," and that "[i]t is important this Bankruptcy Court read Judge Bell's final comments regarding this court case at the issuing of his final order on June 17, 2013." *See* Response at p. 2. His unsworn statements also purport to show that the Plaintiff is financially able to meet her obligations to the Defendant, and that he will suffer greater financial hardship unless his claim against his ex-wife is treated as support, particularly given his report of fire damage at the "farm house." *Id.* He also complains that the Plaintiff "failed to provide all of the information requested by the defendant at the March 29, 2017 deposition." *Id.* at 1.[1]

█ The Sixth Circuit's decision in *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397 (6th Cir.1998), instructs a bankruptcy court to consider traditional state law indicia that are consistent with support obligations. These include, but are not limited to:

a. a label such as alimony, support, or maintenance in the decree or agreement,

---

1. Even forgiving an unrepresented litigant's failure to submit an affidavit or solemn declaration as the applicable rule requires, the Response does not show how the discovery is essential to support the Defendant's opposition to the Motion. *See* Fed. R. Civ. P. 56(d).

b. a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and

c. payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits."

*Sorah,* 163 F.3d at 401.

■ Here, the Plaintiff contends, with good reason, that the JOD and the Implementing Order reveal the true nature of her debt as a property settlement obligation, rather than a "domestic support obligation," notwithstanding a provision within the JOD that purports to transform the debt from dischargeable to non-dischargeable upon the occurrence of the Plaintiff's default. The court agrees with the Plaintiff's construction of these documents, and with her view that the purported transformation is unenforceable under federal law. *See Calhoun,* 715 F.2d at 1107 (federal law controls).

For example, as originally framed, the JOD provides that neither party is entitled to alimony, "except as otherwise provided herein." JOD at p. 2. As is customary, the JOD provided for the division of specified marital debts, including the home equity line of credit ("HELOC") secured by the Galesburg real estate and awarded the property to the Defendant under the heading "Property Settlement in Lieu of Dower." *Id.* at pp. 4–6. The JOD's terms governing property settlement and allocation of debt require each of the former spouses to hold the other harmless for assumed debts. *See, e.g.,* JOD at pp. 3, 5, 6.

A careful review of the JOD shows that the divorce court attempted to fortify the ex-spouses' property settlement and debt-related divisions by authorizing either party to apply to the court for treatment of these obligation as "spousal support in the amount defaulted for which that party becomes liable as a result of the defaulting

party's action." *See* JOD at p. 7. The supposed transformation from property settlement or hold-harmless obligation to "spousal support" is described in the provisions under the heading "Anti–Bankruptcy Clause," which provides in relevant part as follows:

> Spousal support is reserved in an amount equal to any and all liabilities assigned to the parties' pursuant to this Judgment of Divorce. In the event either party default's [sic] upon their respective obligation as ordered herein and the opposing party must pay for those liabilities, the opposing party will be entitled to spousal support in the amount defaulted for which that party becomes liable as a result of the defaulting party's action.

> In the event the aforementioned spousal support is ordered same shall be paid through the office of the Friend of the Court.

> In the event the aforementioned spousal support is ordered, said spousal support shall be non-modifiable, non-extendable and non-reviewable.

> Said support does not terminate upon death of the Payor, Payee or remarriage. This spousal support shall not be taxable to the Payee and not deductible by the Payor for Federal and State income tax purposes. Other than the above provision, neither party is entitled to spousal support and both parties shall be forever barred from same.

*See* JOD at p.7 (the "Anti–Bankruptcy Clause"). According to this passage, the divorce court did not award spousal support originally to either spouse; instead, the putative spousal support obligation purports to spring into existence upon either party's default in meeting his or her property settlement obligations, including with respect to the HELOC. The amount

of the supposed support award is measured by the unpaid property settlement obligation, rather than any particular showing of need or ability to pay at the time of the default.

From the court's review of the JOD, and especially the Anti–Bankruptcy Clause, it plainly appears that, other than labeling the post-default obligation as "support" and authorizing the Friend of the Court to collect them,[2] the divorce court did not imbue the obligations purportedly transformed under this clause with the traditional indicia of spousal support.

First, although true spousal support is generally modifiable to take into account the changing needs of the beneficiary or capacity of the payer, the post-default obligation under the Anti–Bankruptcy Clause is expressly termed "non-modifiable, non-extendable and non-reviewable." So, as noted above, the amount of the supposed support obligation is measured by the unpaid obligations under the various hold harmless clauses, rather than by any showing of need or capacity to pay. See M.C.L. §§ 552.23 (court may award spousal support "after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case") and 552.28 (after a judgment for alimony or other allowance for either party, the divorce court may "make any judgment respecting any of the matters that the court might have made in the original action").

■ Second, the supposed support "does not terminate upon death of the Payor, Payee or remarriage." JOD at p. 7. Because the obligations under the JOD are not contingent upon death or remarriage, these *Sorah* factors point towards property settlement, rather than support. See *Sorah*, 163 F.3d at 401; *Lewis v. Lewis (In*

*re Lewis)*, 423 B.R. 742, 749 (Bankr. W.D. Mich. 2010) (even post-BAPCPA, *Sorah* "supplies the 'indicia' that should be focused upon"). Typically, the obligation to support a spouse does not survive the person to be supported, and although Michigan law recognizes that the estate of a deceased spouse may have continuing obligations to support the surviving spouse, *Luckow v. Luckow*, 291 Mich.App. 417, 805 N.W.2d 453 (2011), even a payer's post-mortem support obligation is modifiable, unlike the obligation imposed under the JOD in this case.

■ Third, the JOD also purports to determine the State and Federal tax consequences relating to the supposed spousal support payments, specifying that the payments "shall not be taxable to the Payee [Mr. Vander Roest] and not deductible by the Payor [Ms. Vander Roest] for Federal and State income tax purposes." *See* JOD at p. 7. As Judge Shefferly explained, the tax provisions in the JOD reveal the divorce court's intent not to award alimony or support, because under the Internal Revenue Code, alimony payments are deductible on the payer's return, and taxable on the payee's. *See Andrus v. Ajemian (In re Andrus)*, 338 B.R. 746, 754–55 (Bankr. E.D. Mich. 2006) (*citing* 26 U.S.C. §§ 71(a) and 215(a)).

■ Fourth, when called upon to implement the Anti–Bankruptcy Clause, the divorce court entered the Implementing Order, which twice characterized the Debtor's obligation to pay the Defendant $7,282.50 on account of the HELOC as "alimony in gross," a term of art under state law indicating the division of property rather than support. *Staple v. Staple*, 241 Mich.App. 562, 616 N.W.2d 219, 222 (2000) ("alimony in gross is not really alimony intended for the maintenance of a

---

**2.** These two *Sorah* factors favor the Defen-      dant's interpretation.

spouse, but rather is in the nature of a division of property"). The divorce court's use of the phrase "alimony in gross" in the Implementing Order corroborates the conclusion to be drawn from the Anti-Bankruptcy Clause making the hold harmless obligations non-modifiable: the debt is not in the nature of support.

■ Finally, as Judge Shefferly observed in *Andrus* when reviewing a similar clause in a divorce decree (which evidently intended to prejudge issues in future bankruptcy proceedings), the court finds no authority for giving the Anti-Bankruptcy Clause preclusive effect on the dischargeability questions presently before this bankruptcy court. *See Andrus,* 338 B.R. at 755–56 ("There is no authority to permit such 'automatic conversion' [from dischargeable property settlement debt to non-dischargeable support obligation] and, conceptually, it appears to violate both §§ 523 and 727 of the Bankruptcy Code."). Although state courts enjoy concurrent jurisdiction to determine the dischargeability of most debts (other than those specified in § 523(c)), no such authority exists in advance of any bankruptcy filing. Accordingly, even if the Anti-Bankruptcy Clause were susceptible to an interpretation that it transformed the property settlement obligations into support under *Sorah,* the court would not be inclined to enforce the transformation in this proceeding.

Finding that the Plaintiff has supported her Motion with documentary evidence as Rule 56(c)(1) in the form of the JOD and the Implementing Order, and given the legal arguments just discussed, the court has no difficulty concluding that the Plaintiff has met her summary judgment burden, thereby shifting to the Defendant the burden of showing the necessity of a trial.

■ In response to a properly supported summary judgment motion, the party bearing the burden of proof at trial cannot "rest on his pleading" but must show that a material factual dispute exists. *United States v. MedQuest Assocs.,* 812 F.Supp.2d 821 (M.D. Tenn. 2011). Here, the Defendant's Response, consisting only of his unsworn statements bearing mostly on the Plaintiff's ability to pay (and the hardship he will suffer if the debt is dischargeable) raises no genuine issue of material fact. The Response comes closest to suggesting a factual dispute where it alludes to the tenor of Judge Bell's comments during the hearing that resulted in the Implementing Order. However, the Defendant did not provide this court with a transcript of the hearing and, as noted above, Judge Bell described the obligation as "alimony in gross," which is not support. As in the federal courts, the Michigan courts speak through their orders. *Tiedman v. Tiedman,* 400 Mich. 571, 576, 255 N.W.2d 632, 634 (1977).

The court finds no genuine issue of material fact in support of the Defendant's characterization of the Plaintiff's debt as a domestic support obligation within the meaning of 11 U.S.C. §§ 101(14A) and 523(a)(5). Rather, the Plaintiff's debt to the Defendant under the JOD is in the nature of a divorce-related property settlement, falling under 11 U.S.C. § 523(a)(15), dischargeable in a chapter 13 case if she confirms and makes all payments required under the chapter 13 plan. *See* 11 U.S.C. § 1328(a).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the court will grant the Plaintiff's Motion and, at the conclusion of this adversary proceeding,[3] will award declaratory relief indicating that her debt to the Defendant is not a

**3.** *See* Fed. R. Civ. P. 54(b) & 58(a).

domestic support obligation. With respect to the remaining count of the Plaintiff's complaint (seeking damages for Defendant's allegedly willful violation of the stay), the court will enter a scheduling order as discussed during the pretrial conference held on May 31, 2017 in Kalamazoo, Michigan.

The court notes, however, that in making a decision on the remaining issues after trial it will be mindful that the JOD's Anti–Bankruptcy Clause and the Implementing Order, and perhaps the comments of the divorce court, may undercut a finding of willfulness. Stated differently, the Defendant's reliance on the divorce court's rulings, if subjectively reasonable, may preclude or diminish the relief available to the Plaintiff under § 362(k).

Finally, the court notes that the Defendant is not bereft of all remedies under the Bankruptcy Code, only the privileges he hoped to enjoy as the holder of a nondischargeable domestic support obligation. Although today's decision means that his claim against his ex-wife may be discharged upon successful completion of her plan, the plan has neither been confirmed nor completed. The trustees in this district will not recommend confirmation unless they are satisfied that the debtor is committing all disposable income to the repayment of her debts within the plan commitment period. 11 U.S.C. § 1325(b)(1). Moreover, once the plan has been confirmed, upon a proper showing, an unsecured claim holder can request a plan modification to increase the plan dividend to take into account post-confirmation changes in a debtor's financial circumstances, including those changes that the Defendant forecasts in his Response. *Id.* § 1329(a).

The court encourages the Plaintiff and her counsel to carefully consider their continued prosecution of this adversary proceeding, and the effect of such litigation on two parties who have endured more than their share of judicial proceedings.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Motion (ECF No. 18) is GRANTED to the extent provided herein; and

2. The court will prepare a final pretrial order scheduling a trial to consider whether the Defendant willfully violated the automatic stay and, if so, what remedy, if any, to impose.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005–4 upon John A. Potter, Esq., Nancy Vander Roest, and Jerry Lee Vander Roest.

**IT IS SO ORDERED.**